**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 15-2041
———

GROUP AGAINST SMOG AND POLLUTION, INC.,
                                        Appellant

v.

SHENANGO INCORPORATED
———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:14-cv-00595)
District Judge: Honorable Cathy Bissoon
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 7, 2015

Before: FUENTES, SHWARTZ, and VAN ANTWERPEN,
*Circuit Judges*

(Opinion Filed: January 6, 2016)

John K. Baillie, Esq.
Group Against Smog and Pollution, Inc.

5135 Penn Ave.
Pittsburgh, PA 15221
        *Counsel for Appellant*

Chester R. Babst III, Esq.
James D. Miller, Esq.
Varun Shekhar, Esq.
Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
        *Counsel for Appellee*

Emily A. Collins, Esq.
Fair Shake Environmental Legal Services
3495 Butler Street, Suite 102
Pittsburgh, PA 15201
        *Counsel for Amici Curiae Sierra Club,
        Mountain Watershed Association, Clean Air
        Council, Three Rivers Waterkeeper, and Center
        for Coalfield Justice*

_____

OPINION OF THE COURT
_____

VAN ANTWERPEN, *Circuit Judge*.

Group Against Smog and Pollution, Incorporated ("GASP") filed suit against Shenango, Incorporated ("Shenango") in the U.S. District Court for the Western District of Pennsylvania pursuant to the citizen suit provision

2

of the Clean Air Act ("Act"), 42 U.S.C. § 7604(a)(1). The District Court granted Shenango's motion to dismiss for lack of subject matter jurisdiction, filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). The District Court found that the administrative agencies were already "diligently prosecuting" the Clean Air Act violations alleged by GASP, and therefore GASP's action was prohibited by the diligent prosecution bar of the Act. 42 U.S.C. § 7604(b)(1)(B); (App. 13–14). We will affirm the judgment of the District Court on other grounds, concluding that GASP has failed to state a claim because administrative agencies were "diligently prosecuting" the Clean Air Act violations and that this prosecution "requires compliance" with the Act. In making this determination, we conclude that the diligent prosecution bar of the Clean Air Act is not a jurisdictional limitation and is therefore properly dismissed through a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, rather than Rule 12(b)(1).

## I.

## INTRODUCTION

Shenango operates the Neville Island Coke Plant, a coke manufacturing and by-products recovery facility in Allegheny County, Pennsylvania.[1] (App. 3). The Neville

---

[1] The Neville Island Coke Plant "performs destructive distillation of coal to produce metallurgical coke and by-products such as tar, light oil, sodium phenolate, and ammonium sulfate. Coke oven gas . . . fuel, which is used to underfire the coke battery and to fuel the boilers, is also produced." (App. 90).

Island Coke Plant is subject to National Ambient Air Quality Standards ("NAAQS") set by the United States Environmental Protection Agency ("EPA") pursuant to the Clean Air Act. 42 U.S.C. §§ 7408–09; (App. 3–4). As part of the Act's encouragement of federal cooperation with state and local governments, Pennsylvania is required to create a "state implementation plan," ("SIP") detailing how it will attain and maintain the NAAQS. 42 U.S.C. § 7410. Once the EPA approves the SIP, it becomes binding federal law. *Id.* § 7413. In Allegheny County, the Commonwealth of Pennsylvania delegates the authority for enforcing air pollution laws to the Allegheny County Health Department ("ACHD"). (App. 4). The ACHD has promulgated emissions standards that are incorporated in the Pennsylvania SIP and are thereby binding federal law under the Clean Air Act. *See* ACHD Rules and Regulations Art. XXI. Three ACHD regulations are at issue in this case:

> First, Section 2105.21.b.1 restricts visible emissions from any battery of coke ovens to no more than five percent . . . of the door areas of the operating coke ovens (the "five percent door emissions standard"). Second, Section 2105.21.f.3 prohibits combustion stack emissions with opacity greater than 20 percent for three minutes over a 60 minute period (the "20 percent combustion stack opacity standard"). Finally, Section 2105.21.f.4 prohibits combustion stack emissions with opacity greater than 60 percent (the "60 percent combustion stack opacity standard").

(App. 4).

4

In 2012, the EPA, the Pennsylvania Department of Environmental Protection ("DEP"), and the ACHD filed an action in the U.S. District Court for the Western District of Pennsylvania against Shenango claiming violations of these three standards. (App. 4–5). The parties entered into a Consent Decree to resolve these violations, specifically addressing the twenty and sixty percent combustion stack opacity standards. (*Id.*). The District Court entered final judgment on this action in 2012 but retained jurisdiction "for the purpose of modifying, construing and/or enforcing the rights and obligations of the Parties to this Consent Decree." (*Id.* at 168–69, 174).

In 2014, GASP sent Shenango a notice of intent to sue, claiming violations of the same three standards. (*Id.* at 5). The ACHD then filed an action against Shenango in the Allegheny County Pennsylvania Court of Common Pleas, and the parties entered into a Consent Order and Agreement. (*Id.*). This Agreement appears to address the five percent door emissions standard, as discussed *infra*, and reaffirms the 2012 Consent Decree's approach to the twenty and sixty percent combustion stack opacity standards. (*Id.*). The Court of Common Pleas entered final judgment on this action on April 8, 2014. (*Id.* at 106). The ACHD retained authority with respect to future violations and "to seek further enforcement of this Agreement" if Shenango fails to comply. (*Id.* at 95). The Consent Order and Agreement was intended to be jointly terminated by the parties upon Shenango's compliance with certain conditions. (*Id.* at 105–06).

On May 8, 2014, GASP filed the instant citizen suit against Shenango in U.S. District Court, again claiming violations of the same three emissions standards. (*Id.* at 6, 19–

5

29). Shenango moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Rules 12(b)(1) and 12(b)(6). (*Id.* at 109–10). The District Court found the issue presented to be jurisdictional. (*Id.* at 6). The Court granted Shenango's motion to dismiss for lack of subject matter jurisdiction, finding that GASP could not bring an action because the ACHD was already "diligently prosecut[ing]" an action in court against Shenango to require compliance under the Act. (*Id.* at 12–14). The Court rejected two arguments raised by GASP in opposition to the motion to dismiss: (1) that the Consent Decrees[2] do not actually require Shenango to comply with the standards set forth in the Act; and (2) that the 2014 Consent Order and Agreement was deficient because the parties failed to provide an opportunity for the public to intervene or comment on the terms of the order. (*Id.* at 11–13). GASP timely appealed. (*Id.* at 1).

## II.[3]

## DISCUSSION

GASP raises two arguments on appeal: (1) that the diligent prosecution bar[4] should not apply because no state or

---

[2] We refer to the 2012 Consent Decree and 2014 Consent Order and Agreement collectively as the "Consent Decrees."

[3] The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 through application of the citizen suit provision in 42 U.S.C. § 7604(a)(1). We have jurisdiction to review the final decision of the District Court pursuant to 28 U.S.C. § 1291.

6

administrative agency was actively "prosecuting" a civil action in court at the time GASP filed its present citizen suit; and (2) that the Consent Decrees from 2012 and 2014 do not "require compliance" with the Act. (Appellant's Br. 16–18). In dealing with these issues we must first determine whether the diligent prosecution bar is jurisdictional or only a claim-processing rule. The District Court proceeded assuming the bar was jurisdictional. (App. 6). We exercise plenary review over the District Court's legal conclusions. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008).

### A.  *Nonjurisdictional Diligent Prosecution Bar*

Amici curiae raise the issue of whether the diligent prosecution bar is jurisdictional and appropriately decided through a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, or whether the diligent prosecution bar is nonjurisdictional and should be decided through a Rule 12(b)(6) motion to dismiss for failure to state a claim.[5] This

---

[4] The diligent prosecution bar, discussed *infra*, is a limitation on the Act's citizen suit provision. It provides that a citizen suit may not be commenced "if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order." 42 U.S.C. § 7604(b)(1)(B).

[5] While Appellant did not raise this argument and has consistently proceeded assuming the diligent prosecution bar is jurisdictional, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide

7

dichotomy is significant, "one of considerable practical importance for judges and litigants," as "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).[6]

The U.S. Supreme Court has noted, "[o]n the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006). *Arbaugh* instructs us that "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed," however "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U.S. at 515–16 (footnote omitted). The Court has described this as a "readily administrable bright line rule."

---

jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (citation omitted).

[6] The differences between a motion to dismiss for lack of subject matter jurisdiction and a motion to dismiss for failure to state a claim include: an objection to subject matter jurisdiction may be raised at any time, a court may raise jurisdictional issues *sua sponte*, and a court may consider evidence beyond the pleadings such as testimony and depositions when considering a jurisdictional challenge. *Henderson ex rel Henderson*, 562 U.S. at 434–35; *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

*Henderson ex rel. Henderson*, 562 U.S. at 435 (quoting *Arbaugh*, 546 U.S. at 516) (internal quotation marks omitted).

In *Henderson*, the Supreme Court distinguished claim-processing rules, which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," from jurisdictional rules, which "govern[] a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Id.* To distinguish these rules, the pivotal question as it applies to this case "is whether Congress mandated" the diligent prosecution bar to be "jurisdictional." *Id.* There are no "magic words" Congress must use to express that a statutory requirement is jurisdictional. *Id.* at 436. Instead, we look "to the condition's text, context, and relevant historical treatment" in determining whether the condition is jurisdictional. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010); *see also Henderson ex rel. Henderson*, 562 U.S. at 436 (stating the Court's approach in *Arbaugh* "is suited to capture Congress' likely intent and also provides helpful guidance for courts and litigants, who will be duly instructed regarding a rule's nature") (internal quotation marks omitted).

Two circuit courts have interpreted *Arbaugh* in the context of a diligent prosecution bar in other acts[7] and have

---

[7] While we rely on cases interpreting other environmental statutes in our present analysis of the Clean Air Act, we note that the legislative history of these other statutes explains that their citizen suit provisions and diligent prosecution bars were "modeled on" the relevant provisions of the Clean Air Act. *See* Jeffrey G. Miller, *Overlooked Issues in the "Diligent Prosecution" Citizen Suit Preclusion*, 10 Widener L. Rev. 63,

concluded the bar is nonjurisdictional. *Louisiana Envtl. Action Network v. City of Baton Rouge*, 677 F.3d 737, 745–49 (5th Cir. 2012) (per curiam) (interpreting the diligent prosecution bar of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(B)); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 491–92 (7th Cir. 2011) (interpreting the diligent prosecution bar of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(b)(1)(B)).

This Court has addressed questions regarding the diligent prosecution bar, not at issue here, in which the bar was referenced as jurisdictional. In these cases, we determined whether the administrative action in question was taken by a "court" for the purpose of applying the diligent prosecution bar. *Student Pub. Interest Research Grp. of New Jersey, Inc. v. Fritzsche, Dodge & Olcott, Inc.*, 759 F.2d 1131, 1135 (3d Cir. 1985) ("Because we find that the EPA's action is not a 'court' proceeding (and fails the first prong of [the citizen suit bar]), we need not address the second issue of whether the consent order constitutes 'diligent prosecution.'"); *see also Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215, 219 (3d Cir. 1979) (determining that the

---

69 & n.31 (2003) (collecting cases); *see, e.g.*, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 62 (1987) (explaining that "both the Senate and House Reports explicitly connected [the citizen suit provision of the Clean Water Act] to the citizen suit provisions authorized by the Clean Air Act"). Because the provisions serve a similar purpose in their respective statutes, courts commonly consider the interpretation of citizen suit provisions and diligent prosecution bars in other statutes in deciding the case at hand. Miller, *supra*, at 69 & n.32.

district court had subject matter jurisdiction because the administrative action in question was not taken by a "court" under the diligent prosecution bar of the Clean Air Act). We did not consider in either case whether Congress intended the bar to be jurisdictional.[8]

We conclude that the diligent prosecution bar of the Clean Air Act is not a jurisdictional limitation. Beginning our analysis with the text of the statute, the language of the diligent prosecution bar does not "clearly state[] that a threshold limitation on [its] scope shall count as jurisdictional." *Arbaugh*, 546 U.S. at 515. The language Congress used, "No action may be commenced," is mandatory, but it is not stated in terms of the court's adjudicatory capacity or jurisdiction. 42 U.S.C. § 7604(b); *see Henderson ex rel. Henderson*, 562 U.S. at 439 (explaining that the Supreme Court has rejected the notion that all mandatory rules are jurisdictional). Congress could have expressly made the diligent prosecution bar jurisdictional by using the word "jurisdiction" or phrasing the language in terms of the court's powers. *See Arbaugh*, 546 U.S. at 516 ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."). Shenango has not identified any specific text in the Act that indicates the diligent prosecution language should "count as jurisdictional." *Beazer E., Inc. v. Mead Corp.*, 525 F.3d 255,

---

[8] Appellee does not cite cases in which any federal court engaged in an analysis of the diligent prosecution bar and concluded that it is a jurisdictional limitation in the vein of *Arbaugh*.

11

261 (3d Cir. 2008) (quoting requirements of *Arbaugh*, 546 U.S. at 515–16) (internal quotation marks omitted).

In *Henderson*, the Supreme Court held that a 120-day notice requirement prior to filing an appeal to the Veterans Court was nonjurisdictional. 562 U.S. at 431. The Court interpreted the following statutory language: "In order to obtain review," an appropriate person "shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed." *Id.* at 438 (quoting 38 U.S.C. § 7266(a)) (internal quotation marks omitted). The Court distinguished this from language governing Federal Circuit review of Veterans Court decisions: "Federal Circuit review must be obtained within the time and in the manner prescribed for appeal to United States court of appeals from United States district courts." *Id.* (quoting 38 U.S.C. § 7292(a)) (internal quotation marks omitted). Because timing requirements for taking an appeal from a district court have long been considered jurisdictional, this latter language clearly signaled congressional intent for Federal Circuit review requirements to be jurisdictional. *Id.* at 438–39; *see Bowles v. Russell*, 551 U.S. 205, 209–14 (2007) (holding that statutory time limits for taking an appeal are jurisdictional based on their "longstanding treatment" as such by the Supreme Court). The former language, at issue in *Henderson*, is not framed in a manner that clearly states its intention to be jurisdictional or references similar treatment to a clearly jurisdictional limitation. 562 U.S. at 439. The Clean Air Act diligent prosecution bar, like the *Henderson* 120-day notice requirement, does not reference the court's jurisdiction in any way nor is it phrased in a way that clearly suggests it is a jurisdictional requirement. We agree with the Seventh Circuit's interpretation of the citizen suit provision in the

12

Resource Conservation and Recovery Act that the "limits on citizen suits appear in separate provisions that do not 'speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" *Adkins*, 644 F.3d at 492 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).[9]

The *Henderson* Court also discussed the placement of statutory provisions in determining that the notice requirement in question was nonjurisdictional. 562 U.S. at 439. The Clean Air Act title for 42 U.S.C. § 7604, "Citizen suits," "can aid in resolving an ambiguity in the legislation's text." *Immigration & Naturalization Serv. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991). Congress further titled § 7604(a): "Authority to bring civil action; jurisdiction," and § 7604(b): "Notice." That these subsections are separately titled suggests they should be considered separate provisions. Rather than including the diligent prosecution bar within the exact provision granting jurisdiction, the diligent prosecution bar is part of this separate "Notice" provision. The "Notice" provision also requires the citizen to notify the involved administrative agencies at least sixty days prior to filing the citizen suit. 42 U.S.C. § 7604(b)(1)(A). This procedural rule is similar to the claim-processing rule in *Henderson*. *See* 562 U.S. at 441 (holding that the 120-day notice requirement for filing an appeal with the Veteran's Court "does not have jurisdictional

---

[9] While Appellee appears to object to the approach of interpreting *Arbaugh* in the context of an environmental case, we have already applied *Arbaugh* in concluding that the "civil action" requirement of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 is not a jurisdictional threshold. *Beazer E., Inc.*, 525 F.3d at 260–61.

13

attributes").[10] The placement of the diligent prosecution bar within the "Notice" subsection suggests the diligent prosecution bar is also a claim-processing rule. *Louisiana Envtl. Action Network*, 677 F.3d at 748 ("The placement of the 'diligent prosecution' bar in the 'Notice' section, alongside a typical claim-processing rule, suggests that Congress intended the 'diligent prosecution' bar to be a claim-processing rule.").

Our language in *Student Public Interest Research Group* and *Baughman* does not control. Neither case specifically addresses the question of jurisdiction, but rather both cases held that the administrative agency involved was not a "court" for the purpose of applying the diligent prosecution bar. *Student Pub. Interest Research Grp. of New Jersey, Inc.*, 759 F.2d at 1139; *Baughman*, 592 F.2d at 219.

---

[10] Appellee relies on *Hallstrom v. Tillamook County* for the proposition that "a plaintiff's failure to abide by the identical notice requirements under the Resource Conservation and Recovery Act . . . warranted dismissal for lack of subject matter jurisdiction." (Appellee's Br. 48) (citing 493 U.S. 20, 23, 31 (1989)). We believe Appellee's reliance on this case is misplaced, as the *Hallstrom* Court stated, "[t]he parties have framed the question presented in this case as whether the notice provision is jurisdictional or procedural. In light of our literal interpretation of the statutory requirement, we need not determine whether § 6972(b) is jurisdictional in the strict sense of the term." 493 U.S. at 31. Therefore, the Court did not determine that this notice provision is jurisdictional. In fact, *Hallstrom* was decided before *Arbaugh* and *Henderson*, which themselves further defined the contours of jurisdictional provisions.

The approach taken in these cases predates the guidance set forth in *Arbaugh*. As the Supreme Court articulated, "the relevant question here is not" whether the diligent prosecution bar "itself has long been labeled jurisdictional, but whether the type of limitation that" the diligent prosecution bar "imposes is one that is properly ranked as jurisdictional absent an express designation." *Reed Elsevier, Inc.*, 559 U.S. at 168.

In terms of the context of the diligent prosecution bar and the Supreme Court's "interpretation of similar provisions," the diligent prosecution bar is analogous to other mandatory, threshold requirements the Supreme Court has deemed nonjurisdictional in addition to the notice requirement in *Henderson*. *See id.* at 168–69 (holding that the Copyright Act's requirement that copyright holders register their work before suing for copyright infringement is not a jurisdictional requirement); *id.* at 166 & n.6 (indicating that the Supreme Court in *Jones v. Bock*, 549 U.S. 199, 216–17 (2007) treated the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 as nonjurisdictional); *Zipes*, 455 U.S. at 393 (holding that "a timely charge of discrimination with the [Equal Employment Opportunity Commission] is not a jurisdictional prerequisite to suit in federal court").

Appellee presents legislative history in which the word "jurisdiction" was used in conjunction with the diligent prosecution bar. *See* S. Rep. No. 91-1196, at 37 (1970) ("[I]f the court viewed the agency action as inadequate, it would have jurisdiction to consider the citizen action notwithstanding any pending agency action."). This language does not convince us that Congress intended the diligent

15

prosecution bar to be jurisdictional. It does appear that Congress intended the diligent prosecution bar to be a mandatory condition precedent to filing a citizen suit. Nevertheless as we have discussed, the actual text of the statute does not reference in any way or clearly suggest its intention to be jurisdictional, and its placement next to a claim-processing timing rule suggests it is a nonjurisdictional requirement. *See Reed Elsevier, Inc.*, 559 U.S. at 166 (stating that the Supreme Court has "treated as nonjurisdictional other types of threshold requirements that claimants must complete, or exhaust, before filing a lawsuit").[11]

Congress did not clearly state or mandate that the diligent prosecution bar of the Clean Air Act "shall count as jurisdictional." *Arbaugh*, 546 U.S. at 515–16. The text and placement of the specific provision reflect congressional intent that the limitation is a mandatory claim-processing rule designed "to promote the orderly progress of litigation" by ensuring the case is not already being diligently prosecuted. *Henderson ex rel. Henderson*, 562 U.S. at 435. It is particularly instructive that the Supreme Court has held similar mandatory threshold requirements are not jurisdictional limitations. We therefore conclude that the diligent prosecution bar of the Clean Air Act is nonjurisdictional.

---

[11] There is no historical treatment of the diligent prosecution bar to discuss because the Supreme Court has not directly addressed the jurisdictional nature of § 7604(b)(1)(B). Thus, we lack "a long line of [the Supreme] Court's decisions" to instruct our analysis. *Henderson ex rel. Henderson*, 562 U.S. at 436 (citations omitted) (internal quotation marks omitted).

16

*B.* *Analysis*

The Clean Air Act provides that citizens may commence a civil action on their own behalf against a person or entity alleged to be in violation of an emission standard or limitation set forth under the Act. 42 U.S.C. § 7604(a)(1). This citizen suit provision is subject to an important limitation, at issue in the present case:

> No action may be commenced—
>  . . .
> if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.

 *Id.* § 7604(b)(1)(B). We have commented that there is "extensive legislative history to establish that Congress intended citizen suits to both goad the responsible agencies to more vigorous enforcement of the anti-pollution standards and, if the agencies remained inert, to provide an alternate enforcement mechanism." *Baughman*, 592 F.2d at 218. However, we have also noted that the "same legislative history also indicates 'that Congress intended to provide for citizens' suits in a manner that would be least likely to clog already burdened federal courts and most likely to trigger governmental action which would alleviate any need for judicial relief.'" *Id.* (quoting *City of Highland Park v. Train*, 519 F.2d 681, 690–91 (7th Cir. 1975)); *see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49,

17

60 (1987) ("The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action."). We consider these policies in assessing the Appellant's arguments.

### 1. *Standard of Review*

We must decide whether the District Court correctly determined that GASP could not advance a citizen suit because of the diligent prosecution bar. We exercise plenary review over the District Court's legal conclusions. *CNA*, 535 F.3d at 139. In so doing, we must ask whether GASP has failed to state a claim. To survive a 12(b)(6) motion to dismiss for failure to state a claim,[12] "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In this review, courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the

---

[12] Although this case was decided by the District Court as a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, consistent with our discussion, *supra*, regarding the nonjurisdictional nature of § 7604(b), we will decide this case under 12(b)(6) standards. We note Shenango's initial motion to dismiss was based on both 12(b)(1) and 12(b)(6), and the District Court should have used the 12(b)(6) standard. We may affirm the judgment of the District Court for any reason supported by the record. *Brightwell v. Lehman*, 637 F.3d 187, 191 (3d Cir. 2011).

plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)) (internal quotation marks omitted).

We may review the 2012 Consent Decree and 2014 Consent Order and Agreement in deciding a 12(b)(6) motion to dismiss for failure to state a claim, as "it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) (citation omitted); *accord Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include . . . letter decisions of government agencies . . . and published reports of administrative bodies." *Pension Benefit Guar. Corp.*, 998 F.2d at 1197 (citations omitted); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (determining that Securities and Exchange Commission filings are also matters of public record appropriately considered in reviewing a Rule 12(b)(6) motion to dismiss). Further, courts may consider exhibits attached to a defendant's motion to dismiss if it is "an undisputedly authentic document" and "plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

The 2012 Consent Decree and 2014 Consent Order and Agreement are public records as they are court decisions and final judgments. Further, the 2014 Consent Order and Agreement was an exhibit attached to the complaint. Portions of the 2012 Consent Decree were attached to the complaint,

19

but the full document was only attached to the defendant's motion to dismiss. The 2012 Consent Decree is undisputedly authentic as neither party nor the District Court has questioned its authenticity. GASP's claims were based on the Consent Decree, specifically GASP's contention that the 2012 Consent Decree does not require compliance with the Act. Our reliance on these Consent Decrees in the context of a Rule 12(b)(6) motion is appropriate.

*2. Were the agencies "prosecuting" an action?*

Appellant argues that the term "prosecuting" in the diligent prosecution bar "requires an agency enforcement action to be pending in court if it is to bar a citizen suit." (Appellant's Br. 26). The argument follows that because the 2012 and 2014 civil actions culminated in final judgments, they were not pending before a court when GASP filed its citizen suit, and therefore the Consent Decrees from these actions could not support a diligent prosecution bar. This issue is one of first impression in this Court. We have little difficulty in holding that when a state or federal agency diligently prosecutes an underlying action in court, the diligent prosecution bar will prohibit citizen suits during the actual litigation as well as after the litigation has been terminated by a final judgment, consent decree, or consent order and agreement. In addition, when a state or federal agency diligently pursues an ongoing consent decree that may be modified by the parties and enforced by the agency, the diligent prosecution bar will prohibit citizen suits. We note that the parties in the present case were still able to modify or enforce the 2012 Consent Decree and 2014 Consent Order and Agreement and the District Court correctly found that the

20

ACHD was "diligently prosecuting" the case by taking actions that furthered the goals of these Consent Decrees, which was compliance with the regulations.

In addition, case law from other circuit courts supports the proposition that if the underlying case was diligently pursued, the diligent prosecution bar will apply even though an agency has entered into a consent decree with a polluter following a civil or administrative action. *See N. & S. Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552, 556 (1st Cir. 1991) ("The focus of the statutory bar to citizen's suits is not on state statutory construction, but on whether corrective action already taken and diligently pursued by the government seeks to remedy the same violations as duplicative civilian action."); *see also Piney Run Pres. Ass'n v. Cnty. Comm'rs. of Carroll Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008) (stating that "when presented with a consent decree" following a completed administrative agency proceeding, "we must be particularly deferential to the agency's expertise"); *Karr v. Hefner*, 475 F.3d 1192, 1197–98 (10th Cir. 2007) (determining that a citizen suit was barred because "the EPA's prosecution," a consent decree previously entered into, "was diligent"); *Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1324 (7th Cir. 1992) (stating that the diligent prosecution bar in the Resource Conservation and Recovery Act "permits a follow-on private suit if the public suit was not prosecuted diligently. But if the agency prevails in all respects, that is the end . . . ."). Courts have concluded, in cases similar to ours, that consent decrees already entered into by administrative agencies and polluting entities were capable of constituting diligent prosecutions.

Within this Circuit, we note that a district court has determined that the diligent prosecution bar applied to a consent order in *Citizens for Clean Power v. Indian River Power, LLC*, 636 F. Supp. 2d 351, 358 (D. Del. 2009). An environmental organization sent a notice of intent to sue to the defendant, prompting the administrative agencies to file suit against the defendant and propose a consent order. *Id.* at 354. On February 13, 2009, the Delaware Superior Court entered the consent order, and on February 26, 2009, the organization filed its citizen suit against the same defendant. *Id.* at 354–55. The court found that the agency "diligently prosecuted its suit against defendant, which preclude[ed] plaintiff's suit under 42 U.S.C. § 7604(b)(1)(B)." *Id.* at 358.[13]

Appellant relies on cases that "employ[] a literal, inflexible interpretation compelled by the clear and unambiguous language of the Act." *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 754 (7th Cir. 2004). The U.S. District Court for the Eastern District of Texas compared the date the plaintiffs' complaint was filed with the date final judgment was entered in the pending case, finding it "clear the state of Texas was actually prosecuting [an applicable civil action] on the date the plaintiffs filed their original complaint." *Glazer v. Am.*

---

[13] In *Citizens for Clean Power*, the District Court did not squarely address the present argument of whether "prosecuting" includes consent decrees from civil actions that resulted in a final judgment. Just as the District Court in this case proceeded, the *Citizens for Clean Power* case impliedly answered this question affirmatively, evidenced by its analysis of whether the prosecution was "diligent." 636 F. Supp. 2d at 357–58.

22

*Ecology Envtl. Servs. Corp.*, 894 F. Supp. 1029, 1035 (E.D. Tex. 1995). Appellant additionally relies on cases from within this Circuit where a district court applied a literal and grammatical analysis to conclude a diligent prosecution bar did not apply. *United States v. Sunoco, Inc.* 501 F. Supp. 2d 656, 665 (E.D. Pa. 2007) ("The statute speaks in the present and present perfect tense: it only applies if [the agency] 'has commenced' and 'is diligently prosecuting' a civil action in court; or if it 'is in litigation' . . . ."); *Pub. Interest Research Grp. of New Jersey, Inc. v. GAF Corp.*, 770 F. Supp. 943, 949 (D.N.J. 1991) (stating that the statute "speaks in the present tense" and it "does not state that a citizen suit is barred if a state *has* prosecuted an action with respect to such violations, although Congress could have easily so provided").

We reject cases cited by Appellant which rely on a literal, inflexible, or grammatical interpretation. We conclude instead that if a state or administrative agency diligently prosecuted a suit, the presence of a final judgment, consent decree, or consent order and agreement will not prevent application of the diligent prosecution bar.

The circumstances of this case show ongoing diligent prosecution. The Consent Decrees provide a means to seek court intervention in the event of continuing violations. (App. 105–06, 168–69). This provides a speedy and efficient means to enforce an order mandating compliance with the regulations without having to initiate a separate lawsuit. Moreover, the 2012 Consent Decree includes a "Continuing Jurisdiction" provision, providing that the District Court "shall retain jurisdiction from the date of entry of this Consent Decree through the date of termination of this Decree for the purpose of modifying, construing and/or enforcing the

23

rights and obligations of the Parties to this Consent Decree." (App. 168). The Decree defines "termination" by requiring Shenango to file a motion with the Court demonstrating its compliance with the terms of the Decree. (*Id.* at 169–70). The 2014 Consent Order and Agreement, in a section titled "Effective Date and Termination," states that "[i]t is the intention of the parties that they will move jointly to terminate this Agreement" either three years from the effective date of the Agreement, or once Shenango demonstrates sufficient compliance with the terms of the Order and Agreement, whichever is sooner. (*Id.* at 105–06). No such motion was filed when GASP filed its citizen suit. The ACHD also retains its authority "to seek further enforcement of this Agreement in the event Shenango fails to successfully comply with its terms and conditions." (*Id.* at 95). Both the 2012 Consent Decree and 2014 Consent Order and Agreement utilize ongoing monitoring and recording of Shenango's emissions, as well as allow ACHD the right to inspect Shenango's facilities or record emissions. (*Id.* at 99–101) (2014 Consent Order and Agreement); (*Id.* at 130–33, 145–46) (2012 Consent Decree).

It is undisputed by their own terms that the 2012 Consent Decree and 2014 Consent Order and Agreement were still in effect when GASP filed its citizen suit. Therefore, although the actions culminated in final judgments, the principal enforcement mechanism against Shenango for these Clean Air Act violations remained in place.

We are reminded that the legislative history of the citizen suit provision of the Clean Water Act suggests that "the citizen suit is meant to supplement rather than to

supplant governmental action." *Gwaltney of Smithfield, Ltd.*, 484 U.S. at 60. Legislative history surrounding the citizen suit provision of the Clean Water Act provides that "[t]he Committee intends the great volume of enforcement actions be brought by the State" and that the citizen suit is appropriate only "if the Federal, State, and local agencies fail to exercise their enforcement responsibility." S. Rep. No. 92-414, at 64 (1971); *Gwaltney of Smithfield, Ltd.*, 484 U.S. at 60.

Appellant is correct that no circuit court has squarely addressed whether the term "prosecuting" in the diligent prosecution bar of the Clean Air Act requires an agency enforcement action to be pending in court when the citizen suit is filed. Courts have impliedly answered this question through their decisions on whether to enforce a diligent prosecution bar when faced with a recent consent decree. Our decision hinges on the circumstances of this case and the ongoing vitality of these Consent Decrees, specifically the parties' ability to modify or enforce the terms of the Consent Decrees.

### 3. Does the prosecution "require compliance" with the Act?

The Clean Air Act states that diligent prosecution must "require compliance with the standard, limitation, or order" of the Act. 42 U.S.C. § 7604(b)(1)(B). We note that the government's prosecution is entitled to great deference. *Karr*, 475 F.3d at 1198 (quoting *Williams Pipe Line Co. v. Bayer Corp.*, 964 F. Supp. 1300, 1324 (S.D. Iowa 1997)); *Friends of Milwaukee's Rivers*, 382 F.3d at 760; *see also N. & S. Rivers Watershed Ass'n, Inc.*, 949 F.2d at 557 ("Where an agency

has specifically addressed the concerns of an analogous citizen's suit, deference to the agency's plan of attack should be particularly favored."). The question of whether the prosecution is diligent is related to the question of whether the prosecution requires compliance with the Act, as both involve the merits of the alleged prosecution. Therefore, we are mindful that "when presented with a consent decree we must be particularly deferential to the agency's expertise." *Piney Run Pres. Ass'n*, 523 F.3d at 459.

GASP alleges that the 2012 Consent Decree and 2014 Consent Order and Agreement do not require compliance with the Act with respect to the twenty and sixty percent combustion stack opacity requirements and the five percent door emissions violations. GASP further argues that because Shenango has continued to violate these provisions since the effective date of the Consent Decree and Consent Order and Agreement the Consent Decrees do not require compliance with the Act. We agree with the District Court that "[o]n balance, the 2012 and 2014 [Consent Decrees] demonstrate that the ACHD is in the process of diligently prosecuting and enforcing the same violations alleged in the instant lawsuit." (App. 9).

We first consider the contention that the ACHD's actions in 2012 and 2014 do not require compliance with the sixty percent and twenty percent combustion stack opacity requirements. The 2012 Consent Decree addresses these violations. In a section titled "Compliance With Applicable Laws," the Decree states that "[n]othing contained in this Consent Decree shall be construed to relieve Defendant of obligations to comply with all applicable federal, state, and local regulations, statutes, and laws, including but not limited

26

to" the Clean Air Act, the Pennsylvania SIP, and the ACHD Rules and Regulations. (App. 164). This Consent Decree specifically requires compliance with both the twenty percent and sixty percent combustion stack opacity standards:

> Defendant shall not operate, or allow to be operated, any battery of coke ovens at the Facility in such manner that, at any time, emissions from any coke oven battery combustion stack at the Facility (including emissions from the COB S-1 combustion stack):
>  . . .
> b.      equal or exceed any opacity of 20% for a period or periods aggregating in excess of three (3) minutes in any 60 minute period; or
> c.      equal or exceed any opacity of 60% at any time.

(App. 126–27). The Decree was still effective when GASP filed its citizen suit, as the District Court retained jurisdiction. (App. 168).

We next consider GASP's contention that the Consent Decrees do not require compliance with the five percent door emissions standard. The 2014 Consent Order and Agreement addresses the five percent door emissions violations. The Consent Order and Agreement states that "the ACHD has found and determined . . . . [e]xcess visible emissions from the door areas of Battery S-1 in violation of Section 2105.21.b.1," which is the five percent door emissions standard of the ACHD Rules and Regulations. (App. 4, 89–90). In addition to assessing a civil penalty for these

27

violations, the Agreement set forth measures to address the five percent door emissions violations, "to enhance the control of . . . coke oven door emissions" and implement "[d]oor inspection procedures [that] have been revised to include a door change-out program of 1 to 2 doors/week." (App. 94, 102). This Agreement was still effective when GASP filed its citizen suit and the ACHD retained the authority "to seek further enforcement of this Agreement." (App. 95, 105–06).

The 2012 Consent Decree and 2014 Consent Order and Agreement adequately set forth ACHD's approach with respect to these three Clean Air Act violations at issue with Shenango which include monitoring the violator, providing for penalties in the event of violations, and requiring the violator to bear the cost of improvement. Concluding that this approach does not require compliance with the Act when the Consent Decrees specifically reference and address these three violations would question the agency's expertise and contradict the accepted practice of giving deference to the diligence of the agency's prosecution. GASP's apparent dissatisfaction with the 2012 Consent Decree led to a subsequent civil action and the 2014 Consent Order and Agreement. Taken together, these Consent Decrees address GASP's contentions. "Merely because the State may not be taking the precise action Appellant wants it to or moving with the alacrity Appellant desires does not entitle Appellant to injunctive relief." *N. & S. Rivers Watershed Ass'n, Inc.*, 949 F.2d at 558. Therefore, we will affirm the District Court's finding that ACHD's diligent prosecution "requires compliance" with the Act.

**III.**

28

## SUMMARY

In deciding this case, we have determined that the diligent prosecution bar of the Clean Air Act is a claim-processing rule, not a jurisdictional limitation, and should have been dealt with under Rule 12(b)(6) rather than Rule 12(b)(1). GASP has failed to state a cause of action in its citizen suit because of the diligent prosecution bar. The ACHD diligently prosecuted the same three Clean Air Act violations GASP now attempts to litigate. The ACHD entered into a Consent Decree and Consent Order and Agreement with Shenango which were still in effect when GASP filed its citizen suit. ACHD's prosecution requires compliance with the Act. We hold that when a state or federal agency diligently prosecutes an underlying action in court, the diligent prosecution bar will prohibit citizen suits during the actual litigation as well as after the litigation has been terminated by a final judgment, consent decree, or consent order and agreement. In addition, when a state or federal agency diligently pursues an ongoing consent decree that may be modified by the parties and enforced by the agency, the diligent prosecution bar will prohibit citizen suits.

Accordingly, we will affirm the District Court's Order granting Shenango's motion to dismiss, albeit for somewhat different reasons.