**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2215
_____

CLEAN AIR COUNCIL,
                                        Appellant

v.

UNITED STATES STEEL CORPORATION
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-19-cv-01072)
District Judge: Hon. Marilyn J. Horan
_____

Argued: January 29, 2021

Before: RESTREPO, BIBAS, and PORTER, *Circuit Judges*

(Filed: July 20, 2021)
_____

Lisa W. Hallowell
Eric V. Schaeffer                    [ARGUED]
ENVIRONMENTAL INTEGRITY PROJECT
1000 Vermont Avenue, N.W.
Suite 1100
Washington, DC 20005

    *Counsel for Appellant*

Mark K. Dausch
James D. Mazzocco
BABST CALLAND
603 Stanwix Street
Pittsburgh, PA 15222

James C. Martin                    [ARGUED]
Colin E. Wrabley
REED SMITH
225 Fifth Avenue
Pittsburgh, PA 15222

    *Counsel for Appellee*

Jason A. Levine
ALSTON & BIRD
950 F Street, N.W.
Washington, DC 20004

    *Counsel for Amici Appellees Chamber of Commerce of the*
    *United States of America, American Chemistry Council,*
    *National Mining Association, American Coke & Coal*
    *Chemicals Institute, and Pennsylvania Chamber of*
    *Business & Industry*

———————————

## OPINION OF THE COURT

———————————

BIBAS, *Circuit Judge*.

When Congress writes, context matters. Shorn of their surroundings, some words can mean many things. But context clarifies, and neighboring language often shows what each word must mean.

Following two fires at its steel plant, U.S. Steel polluted the air. Because that pollution violated its Clean Air Act permits and regulations, it reported the fires to the local officials who enforce that Act. Even so, the Clean Air Council, an environmental watchdog, sued. It argues that under CERCLA, U.S. Steel should have reported the pollution to the federal government too.

All the arguments hinge on the meaning of two words: "subject to." CERCLA (the Comprehensive Environmental Response, Compensation, and Liability Act) exempts from reporting any "federally permitted" emissions. 42 U.S.C. § 9603. That includes emissions "*subject to*" certain Clean Air Act permits and regulations. § 9601(10)(H) (emphasis added). The Council says that "subject to" means "obedient to." Under its definition, an emission cannot be "subject to" a permit or regulation that it violates. But that is just one meaning of those words, and not the one that fits here. Rather, in context, "subject to" means "governed or affected by." Since U.S. Steel's emissions were governed by a Clean Air Act permit, that

3

means they were "federally permitted" under CERCLA and thus exempt from federal reporting. Because the District Court got that right, we will affirm its dismissal.

## I. BACKGROUND

### A. The fires at the steel plant

U.S. Steel runs the Mon Valley Works, a major steel facility near Pittsburgh. The Works comprises three plants: The Clairton Plant processes raw coal into coke, creating a byproduct called coke-oven gas. The Edgar Thomson Plant uses coke to make steel. And the Irvin Plant processes and finishes the steel. All three use coke-oven gas as fuel. And all three have Clean Air Act permits.

Burning raw coke-oven gas belches benzene, hydrogen sulfide, and other pollutants into the air. So before the plants use it, the Clairton Plant cleans up the raw gas in several control rooms. But in December 2018 and again in June 2019, fires shut down two of these control rooms, taking them offline for months. During those months, U.S. Steel could not fully process the raw gas, but kept burning it as fuel. That emitted pollutants into the air.

U.S. Steel promptly reported the fires to the Allegheny County Health Department, notifying it that it "may have to [release] raw gas" with "possible high [amounts of] sulfur." App. 90–91; *see* App. 81–82 (acknowledging releases of excessive hydrogen sulfide after each fire). It made these reports to comply with its Clean Air Act permits and regulations.

4

## B. The Clean Air Act and how Pennsylvania implements it

Rather than creating a federally run regime, the Clean Air Act relies on "cooperative federalism." *Bell v. Cheswick Generating Station*, 734 F.3d 188, 190 (3d Cir. 2013) (internal quotation marks omitted). Under the Act, the federal government sets broad, national standards for air quality. *Id.* (citing 42 U.S.C. §7409(b)(1)). But it lets states themselves implement and refine the emissions limits needed to meet those standards. *Id.* (citing §7410(a)(1)). The collection of a state's regulations is called a State Implementation Plan, and the U.S. Environmental Protection Agency must approve each Plan. *Id.*

A key part of the Act is its Title V permit scheme. Title V requires an operating permit for every "major source." §7661a(a). These Title V permits are comprehensive: they "consolidat[e] into a single document all of a facility's obligations under the Act … includ[ing] all 'emissions limitations and standards' that apply to the source, as well as associated inspection, monitoring, and reporting requirements." *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 309–10 (2014) (quoting §7661c(a)). Each Title V permit incorporates all the requirements of the state's Plan. *See* 40 C.F.R. §§70.7(a)(1)(iv), 70.2; *Sierra Club v. EPA*, 964 F.3d 882, 891–92 (10th Cir. 2020).

States must submit proposed permits to the EPA, which can issue, reject, modify, or revoke them. §7661d. The EPA, local agencies, and private citizens may police and enforce violations of these permits. §7604(a)(1), (f)(4).

Pennsylvania implements the Act. It has an approved Plan and leaves local enforcement to local agencies—here, the Allegheny County Health Department. *See* 40 C.F.R. §52.2020(c)(2). In turn, the County has adopted its own emissions standards, monitoring standards, permitting programs, and reporting requirements. *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 120 (3d Cir. 2016); 40 C.F.R. §52.2020(c)(2). Collectively, these are known as Article XXI. *See id.* (both sources). Article XXI is incorporated into Pennsylvania's Plan, making its rules "binding federal law under the Clean Air Act." *Grp. Against Smog & Pollution*, 810 F.3d at 120.

Article XXI requires various reports. If pollution-control equipment breaks down and a source is "substantial[ly] likel[y]" to emit "air contaminants in violation of this Article … [or] potentially toxic or hazardous materials," the source's operator must immediately notify the Department. Art. XXI, §2108.01(c)(1). The operator must also detail the breakdown, the types and estimated amounts of pollutants, and the measures being taken to curtail them. §2108.01(c)(2).

### C. CERCLA's pollution-reporting requirement and exemptions from it

Other federal laws also require reporting emissions of pollutants. One of them is CERCLA. When a facility releases more than a set amount of certain pollutants, CERCLA requires the operator to "immediately notify the National Response Center," a division of the Coast Guard. 42 U.S.C. §9603(a). Those who do not face large penalties. *See* §9609(b)(1).

6

But not all emissions have to be reported under CERCLA. Congress exempted "federally permitted release[s]." §9603(a). That exemption covers eleven types of releases, including:

- "discharges in compliance with a permit" under the Federal Water Pollution Control Act, §9601(10)(A), (D);

- "releases in compliance with a legally enforceable final permit" under the Solid Waste Disposal Act, §9601(10)(E);

- "any injection of fluids authorized under" the Safe Drinking Water Act, §9601(10)(G); and

- "any release … in compliance with a legally enforceable license, permit, regulation, or order issued pursuant to the Atomic Energy Act," §9601(10)(K).

Only one of the eleven paragraphs exempts air pollution:

- "any emission into the air *subject to* a permit or control regulation under" the Clean Air Act or state Plans implementing it. §9601(10)(H) (emphasis added).

This last paragraph is the CERCLA reporting exemption at issue.

### D. The Clean Air Council sues U.S. Steel under CERCLA

By burning raw coke-oven gas, the Clean Air Council claims, U.S. Steel released reportable amounts of coke-oven emissions, benzene, and hydrogen sulfide. The Council sent

U.S. Steel a demand letter and then sued it, claiming that these emissions were not "federally permitted releases" under CERCLA. The emissions were not "subject to" the relevant permits, it reasoned, because they *violated* each plant's Title V permit. §9601(10)(H). Thus, U.S. Steel had to report the emissions not only to the Allegheny County Health Department, but also to the Coast Guard's National Response Center.

The District Court disagreed. It held that the emissions were "federally permitted releases" because they were *governed by*—and thus "subject to"—the permits. *Clean Air Council v. U.S. Steel Corp.*, 2020 WL 2490023, at *4 (W.D. Pa. May 14, 2020). So it was enough to report the fires to the Department under the Clean Air Act; U.S. Steel did not also have to report them to the Center under CERCLA. The court dismissed, and the Council now appeals. We review de novo. *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021).

## II. IN §9601(10)(H), "SUBJECT TO" MEANS "GOVERNED OR AFFECTED BY"

This case turns on what "subject to" means in CERCLA's definition of "federally permitted release," §9601(10)(H). We start with the phrase's plain meaning when Congress enacted it in 1980. Dueling dictionary definitions support either side. In isolation, "subject to" could have meant either "governed or affected by," as U.S. Steel argues, or "obedient to," as the Council urges. *Subject to*, *Black's Law Dictionary* (5th ed. 1979). Those are the only two definitions that could fit. But any ambiguity melts away in context: Congress meant the former, not the latter.

8

### A. In context, "subject to" cannot mean "obedient to"

"Obedient to" means "in compliance with." *See Obedience*, in *id.* And when defining "federally permitted release[s]" in § 9601(10), Congress most often required "compliance with a … permit." § 9601(10)(A), (D), (E), (F), (K); *see also id.* (J) ("in compliance with applicable pretreatment standards"), (G) ("authorized under … injection control programs").

But not in paragraph (H)—the only paragraph addressing how CERCLA works with the Clean Air Act and the only one relevant here. When Congress uses a particular phrase in one section of a law but not in another section of the same law, we presume that it included it in one place and excluded it from the other intentionally. *Russello v. United States*, 464 U.S. 16, 23 (1983). If Congress had meant to condition the exemption on *compliance with* a permit, it would have used that phrase again. It did not.

### B. Other provisions of CERCLA and the Clean Air Act differentiate "subject to" from "comply with"

What local context suggests, the broader schemes confirm: Both CERCLA and the Clean Air Act often distinguish "subject to" from "in compliance with." So "subject to" cannot mean "obedient to." It must mean "governed or affected by."

Start with CERCLA. Take a neighboring provision, § 9604(k)(10). There, Congress required grant recipients to "be *subject to* an agreement that requires the recipient to *comply with* all applicable Federal and State laws." § 9604(k)(10)(B) (emphases added). Or take the requirement that "[e]ach department, agency, and instrumentality of the United States … shall

be *subject to*, and *comply with*, this chapter." §9620(a)(1) (emphases added). In each provision, if "subject to" meant "in compliance with," the two phrases would be redundant.

The Clean Air Act likewise repeatedly distinguishes the two phrases. Consider §7418(a). That subsection requires that "each officer, agent, or employee … shall be *subject to*, and *comply with*," various air-pollution rules and requirements. §7418(a) (emphases added). Or consider the requirement that an owner or operator show that its sources "are *subject to* emission limitations and are *in compliance … with* all applicable emission limitations and standards." §7503(a)(3) (emphases added); *accord* §7651d(d)(4). In a range of other provisions, the Act treats being "subject to" a rule or permit as different from complying with it. *See, e.g.*, §§7429(b)(2), 7429(b)(3), 7651d(c)(3), 7651d(c)(5), 7651c(d)(5), 7651g(b), 7651g(f), 7651g(h)(2), 7651k(e), 7651*l*, 7651m.

To its credit, the Council recognizes the problem of context. It "concede[s] that's a significant issue" and a "troubling discrepancy." Oral Arg. Tr. 11. In response, it argues that U.S. Steel's reading would lead to absurd results, that the legislative history and statutory purpose support its side, and that we should defer to an agency decision. But none of these arguments succeeds.

## C. Reading "subject to" as "governed or affected by" makes sense

First, the Council argues the absurdity canon. It claims that reading the statute in context would "compel an odd result." Appellant's Br. 14, 33–34 (quoting *Pub. Citizen v. U.S. Dep't*

10

*of Justice*, 491 U.S. 440, 454 (1989)). But reading "subject to" to mean "governed or affected by" in the definition of "federally permitted release" is logical, not absurd. It fits the Act's scheme of cooperative federalism.

By exempting violations of the Act from CERCLA's federal reporting requirement, paragraph (H) lets local regulators handle violations. That happened here: Right after the fires, U.S. Steel notified the Department. It kept the County abreast of the steps it was taking. And when the County thought that U.S. Steel was violating its permits or needed to do more, it issued enforcement orders. Indeed, the Council attached those orders to its complaint.

True, U.S. Steel's failure to report again under CERCLA meant that the federal government was not informed. But reporting again would have been duplicative. As amici explain, notifying the National Reporting Center would have served no purpose. The Act's cooperative federalism left the response to the state. And U.S. Steel remains subject to liability for its hazardous releases under the Act. Indeed, four months before filing this suit, the Council sued U.S. Steel on that precise theory. U.S. Steel could also be liable for not *reporting* the benzene and the amounts of hydrogen-sulfide and coke-oven emissions to the County. But again, any liability would come from the Act, not CERCLA. Art. XXI, § 2108.01(c)(1), (2)(D)–(E).

## D. The vague legislative history and alleged purpose cannot muddy the clear statutory text

Next, the Council cites a Senate committee report, as well as a Senate committee chairman's statements that accidents

11

should be reportable under CERCLA. But none of these remarks discusses the meaning of "subject to" or how that phrase integrates the Clean Air Act's requirements with CERCLA. Even if it did, the legislative history cannot cloud clear text. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). The same is true of the alleged statutory purpose (to ensure fast government responses, without creating gaps in reporting requirements). *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010).

### E.  No deference is called for because the statute is clear

Finally, the Council asks us to defer to the executive branch's reading. In the early 1990s, an administrative decision found CERCLA's phrase "subject to" ambiguous and read it to exclude emissions that violate Clean Air Act permits. *In re Mobil Oil Corp.*, 1992 WL 293133, at *8, *17 (EPA Adm'r Sept. 30, 1992), *aff'd*, 1994 WL 544260, at *12 (EPA Env'tl Appeals Bd. Sept. 29, 1994). But the decision deserves no deference.

"[D]eference is not due unless a 'court, employing traditional tools of statutory construction,' is left with an unresolved ambiguity." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018) (quoting *Chevron USA Inc. v. NRDC*, 467 U.S. 837, 843 n.9 (1984)). But as discussed, context resolves the meaning of "subject to." And the administrative decision did not grapple with the many similar provisions discussed above, which leave no ambiguity for the agency to resolve. The decision also rooted its reading not in agency expertise, but in ordinary statutory interpretation. *In re Mobil Oil Corp.*, 1992 WL 293133,

at *8–10, *aff'd*, 1994 WL 544260, at *7–12. This decision neither binds nor persuades us.

*  *  *  *  *

In short, under § 9601(10)(H) of CERCLA, "subject to" unambiguously means "governed or affected by," not "obedient to." Thus, air emissions that violate relevant Clean Air Act permits are still "subject to" those permits and so are "federally permitted" and exempt from CERCLA's scope. §§ 9601(10)(H), 9603(a).

### III. THE CHALLENGED EMISSIONS WERE "FEDERALLY PERMITTED"

The District Court granted U.S. Steel's motion to dismiss, holding that its emissions of hydrogen sulfide, benzene, and coke-oven emissions were "federally permitted release[s]" as that term is defined in § 9601(10)(H). *Clean Air Council*, 2020 WL 2490023, at *4. We review its dismissal de novo. *In re Allergan ERISA Litig.*, 975 F.3d 348, 353 n.9 (3d Cir. 2020).

The Council argues that the court was wrong to consider the exception because it is an affirmative defense. *See United States v. Freter*, 31 F.3d 783, 788 (9th Cir. 1994). But we need not decide that. Even if the exception is an affirmative defense, we may consider it here.

True, courts rarely consider affirmative defenses on motions to dismiss. *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005). But sometimes we do. We may dismiss a complaint when "an unanswered affirmative defense appears on its face." *Id.* That includes documents attached to the complaint and

13

matters of public record. *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018). On the face of these documents, the federally permitted release exception applies.

To be federally permitted under paragraph (H), an emission must be "subject to" a permit or control regulation under certain sections of the Clean Air Act, including "[s]tate implementation plans." § 9601(10)(H). Just because a plant is subject to a Title V permit does not mean that every emission from that plant is automatically "federally permitted." But these releases were. As the documents attached to the complaint and the Title V permits show, U.S. Steel's emissions at issue were all subject to its Title V permits or regulations under the Act.

## A. The Council concedes that the hydrogen-sulfide emissions were covered by federal permits

The hydrogen-sulfide emissions are the easiest. At oral argument, the Council admitted that those emissions violated U.S. Steel's permits under the Act. Emissions cannot violate permits or regulations unless they are covered by those permits or regulations. So these releases were "subject to" those permits and thus federally permitted.

## B. The documents attached to the complaint show that the benzene emissions were covered by federal permits

Benzene requires a few more steps. Though the Council now disputes that the benzene emissions were covered by federal permits, its demand letter took a different tack. There, it complained that "neither the permits for the Irvin Plant nor [those for] the Edgar Thomson Plan[t] authorize any emissions

14

of benzene." App. 42. And, it claimed, the Clairton Plant's permit allows benzene emissions only from control room 2, not from the parts of the plant that burned the raw gas. It was correct: Under Article XXI, a plant may not operate if it releases *any* air pollution, including benzene, unless "explicitly permitted by this Article." Art. XXI § 2101.11(b)(1); 42 U.S.C. § 7412(b)(1). In other words, the benzene emissions were covered by (and in violation of) those permits.

What the Council's demand letter suggests, other evidence confirms. Take U.S. Steel's Title V permits, which we may consider as public records. Each sets specific limits on benzene or volatile organic compounds, which include benzene. Irvin Plant Permit 94; Clairton Plant Permit 258; Edgar Thomson Plant Permit 107. Or take section 112 of the Clean Air Act. Recall that the definition of "federally permitted release" covers not just permits, like U.S. Steel's Title V ones, but "any emission into the air subject to a … control regulation under … section 112" as well. § 9601(10)(H). Section 112 of the Act lists benzene as a hazardous air pollutant. § 7412(b)(1). So any release of benzene must meet that section's stringent emission standards. *See* § 7412(d)(1).

On the face of the complaint and attached documents, then, U.S. Steel's benzene emissions were "subject to a permit … under … [a] State implementation plan[ ]," as well as "control regulation[s] under … section 112" of the Act. § 9601(10)(H). Because these releases were "subject to" the Act's relevant permits and regulations, they were exempt from reporting under CERCLA as "federally permitted release[s]."

### C. The documents attached to the complaint show that the coke-oven emissions were covered by federal permits

Coke-oven emissions are no different. As with benzene, the Council's demand letter charged that "none of the facilities' permits authorize the emission of any amount of coke oven gas." App. 41. In other words, the emissions violated the permits that covered them. Also like benzene, coke-oven emissions get special treatment under section 112 of the Act. Indeed, section 112(d)(8) requires emission standards for coke ovens. §7412(d)(8)(A); Art. XXI §2105.21(h). And an EPA regulation promulgated under section 112 lists coke-oven emissions as a hazardous air pollutant. 40 C.F.R. §302.4 tbl. 302.4; §7412(b)(2). So they too are "subject to a … control regulation under … section 112." §9601(10)(H). And being "subject to" a permit and control regulation, they too were "federally permitted." *Id.*

\* \* \* \* \*

To be sure, the District Court's analysis was not perfect. It held that "U.S. Steel's operations at the Mon Valley Works facilities are subject to permits issued under the Clean Air Act, and thus the emissions at issue here are 'federally permitted releases' and exempt under CERCLA." *Clean Air Council*, 2020 WL 2490023, at \*4. But §9601(10)(H) looks to whether "emissions"—not "operations"—are subject to permits under the Act. The District Court's suggestion otherwise was mistaken. Yet that misstatement did not matter here.

Section 9603(a) exempts from CERCLA reporting any emission governed or affected by relevant Clean Air Act permits or regulations. To be exempt, the emission need not comply with those permits or regulations. Because the complaint and attached documents alleged that the challenged emissions violated those permits and so were covered by them, we will affirm the District Court's dismissal.