**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2258
_____

ADAM POTTER; MOXIE HC LLC,
Appellants

v.

COZEN & O'CONNOR;
ANNE BLUME, Esquire;
ANNE M. MADONIA, Esquire
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-20-cv-1825)
U.S. District Judge: Honorable Nitza I. Quiñones Alejandro
_____

Submitted Under Third Circuit LAR 34.1(a)
March 14, 2022

Before: JORDAN, KRAUSE, and PORTER, *Circuit Judges*

(Opinion Filed: August 24, 2022)

Clifford E. Haines
Haines & Associates
1339 Chestnut Street
The Widener Building, 5th Floor
Philadelphia, PA 19103

    *Attorney for Adam Potter and Moxie HC LLC*

Brian P. Flaherty
Cozen & O'Connor
1650 Market Street
One Liberty Place, Suite 2800
Philadelphia, PA 19103

    *Attorney for Cozen & O'Connor, Anne Blume,*
    *Esquire, and Anne Madonia, Esquire*

———————

**OPINION**

———————

KRAUSE, *Circuit Judge.*

A plaintiff who seeks to invoke the jurisdiction of the federal courts must meet the standing requirements of Article III of the United States Constitution. But courts have also attached the label of "standing doctrine" to various "equitable" or "prudential" limitations they have imposed on a plaintiff's ability to bring a claim, raising the question whether those so-called standing doctrines are also jurisdictional. This case involves the third-party standing doctrine, which as applied in the context of derivative harm to shareholders, has come to be called the "shareholder standing rule." On the basis of that rule, the District Court dismissed Appellants' claim under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. But the third-party standing rule is merely prudential, not constitutional and jurisdictional, and is therefore properly considered under Rule 12(b)(6), not Rule 12(b)(1). And because there are different considerations in deciding a motion to dismiss under Rule 12(b)(6) that could produce a different outcome in this case, we will vacate and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Appellees Cozen O'Connor, Anne Blume, and Anne Madonia (collectively, the "Lawyers") comprise the legal team

---

[1] Because we conclude the motion to dismiss should have been analyzed under Rule 12(b)(6), we draw the facts

involved in the 2018 sale to The Institutes, LLC, of certain companies of which Appellants, Adam Potter and Moxie HC LLC (collectively, the "Shareholders"), are the sole shareholders.[2] JA 34a-36a, 39a. Starting in 2011, Attorney Blume also served on the board of directors and as the General Counsel for one of the LLCs, where she and the other board members were responsible for assisting the Shareholders in making various business decisions. JA 37a. Unbeknownst to the Shareholders at the time, however, Cozen represented The Institutes in a number of matters, including in delivering the purchase offer and negotiating the price for this very transaction. JA 39a-41a. Even when Potter asked directly whether there was a conflict, Blume allegedly brushed aside the question and continued to provide legal advice about the proposed sale. JA 40a-41a. Ultimately, Potter took Blume's advice to accept an offer of $20 million for the LLCs and executed the Asset Purchase Agreement (APA) drafted by Cozen attorneys.[3] JA 40a-41a.

---

from the complaint and accept them as true. *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 264 n.1 (3d Cir. 2016).

[2] At the time of sale, Potter owned 100% of the stock of C&E MGMT and Planning, Inc. while Moxie—an LLC of which Potter was the sole member—owned 100% of Claims Pages, LLC and CLM Group, Inc. JA 34a-36a. Potter and Moxie (together, "the Shareholders") are the Plaintiffs-Appellants in this case; the LLCs are not parties.

[3] Potter eventually retained separate outside counsel who reviewed and negotiated the transaction documents on Shareholders' behalf. JA 41a. By that point, however, the purchase price was fixed and non-negotiable. *Id.*

4

After the deal closed, the Shareholders allegedly determined that they had sold the LLCs at a price substantially below their fair market value. *Id.* They further determined that, in a subsequent dispute under the APA about the value of installment payments, Cozen and Attorney Madonia had wrongfully secured a favorable outcome for The Institutes by using confidential client information that Blume had learned in the course of her work with Potter and the LLCs, costing the LLCs an additional $344,951. JA 42a-44a. All told, the Shareholders allege that the Lawyers' involvement in the sale caused them "millions of dollars in damages." JA 44a.

Once these conflicts came to light, Potter brought suit against the Lawyers, claiming breach of fiduciary duty and professional malpractice sounding in tort and contract. JA 44a-51a. Significantly, though, he chose to bring suit in the Shareholders' names, even as he identified the harm as "the difference in the true value of the [LLCs] and the purchase price" that, under the APA, was to be paid to the LLCs themselves. JA 44a; *see* JA 58a, 63a (defining "Sellers" as the LLCs and specifying that payments would be made to "Sellers").

Seizing on this discrepancy, the Lawyers moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing under the "shareholder standing rule" that Potter and Moxie did not have the legal right to bring claims of the corporate entities in their own names. JA 209, 237a-40a. In opposition to that motion, however, the Shareholders characterized the Lawyers' motion as a challenge to their Article III standing and, hence, a facial attack on the court's subject matter jurisdiction, pursuant to Rule 12(b)(1). JA 571a.

5

In a nod to both sides, the District Court ruled in the Lawyers' favor, JA 19a, but adopted the Shareholders' framing and dismissed their complaint under Rule 12(b)(1), instead of under Rule 12(b)(6), JA 23a. Subsequently, the Court denied the Shareholders' motion for reconsideration or leave to amend, reasoning that because the Shareholders "lack[ed] Article III standing to prosecute their underlying claims," they necessarily "lack[ed] standing to cure th[e] jurisdictional defect" with an amendment. JA 18a n.1. The Shareholders filed this timely appeal. JA 1a.

## II.   JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1332, and, as always, had "jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (citing *United States v. Mine Workers of Am.*, 330 U.S. 258, 291 (1947)). We have jurisdiction to review the District Court's order of dismissal under 28 U.S.C. § 1291.

In reviewing a district court's dismissal for lack of standing, we consider whether the complaint "contain[s] sufficient factual matter that would establish standing if accepted as true." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (quotation and internal quotation marks omitted). Our standard of review on that ruling is *de novo*, accepting the facts alleged in the complaint as true and construing the complaint in the light most favorable to the non-moving party. *Id.*; *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 294 n.2 (3d Cir. 2007). In contrast, we review a district court's denial of leave to amend for abuse of discretion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

6

## III. DISCUSSION

Neither party challenges the District Court's decision to analyze shareholder standing as an issue of subject matter jurisdiction under Rule 12(b)(1). But although a court's "inquir[y] into its own jurisdiction is most frequently exercised in the negative—that is, by questioning whether federal jurisdiction exists even when all parties assume that it does," *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016), the court also has a "virtually unflagging obligation" to exercise the jurisdiction that it does have, even when the parties assume it does not, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). So here, we must determine whether the shareholder standing rule did, in fact, deprive the District Court of Article III jurisdiction, even though both parties on appeal accept that premise.[4] *Cf., e.g.*, *Hartig*, 836 F.3d at 267 ("[R]egardless of the acquiescence or wishes of the parties, we must question whether the District Court properly treated antitrust standing as a jurisdictional issue under Rule 12(b)(1)."); *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 & n.5 (3d Cir. 2016) (addressing *sua sponte* "whether the diligent prosecution bar is jurisdictional . . . or . . . nonjurisdictional" because the court must "raise and decide [even] jurisdictional

---

[4] Although the Lawyers, as noted, moved to dismiss in the District Court under Rule 12(b)(6), they have opted on appeal to defend the District Court's ruling that Potter and Moxie's lack of shareholder standing equates to a lack of Article III standing. The Shareholders, in their opening and reply briefs, accept the District Court's premise but claim the shareholder standing rule does not apply because they suffered injuries separate from the LLCs.

questions that the parties . . . elect not to press" (quotation omitted)).

Below, we first address the nature of the shareholder standing rule, concluding it is non-jurisdictional and did not warrant dismissal under Federal Rule of Civil Procedure 12(b)(1), before discussing the implications of this holding for remand.

## A. The Shareholder Standing Rule is Prudential and Non-Jurisdictional.

The District Court reasoned that because all of the harm the Shareholders attributed to the Lawyers' alleged misconduct was inflicted directly on the LLCs and affected the Shareholders only to the extent of their derivative ownership interests, "the only injury-in-fact alleged . . . is an injury suffered by the [LLCs] themselves," so the Shareholders lacked Article III standing. JA 25a–26a. The Court had in mind the third-party standing doctrine, which requires that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). In the context of harm to a corporation, this doctrine has given rise to the "so-called shareholder standing rule," which is "a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Id.* But in equating shareholder standing with Article III standing and dismissing under Rule 12(b)(1), the Court treated the shareholder standing rule as constitutional and jurisdictional, and not merely as prudential. To understand

8

why this was error we consider (1) the distinction between constitutional and prudential standing for federal jurisdiction; and (2) whether the third-party standing doctrine is jurisdictional.

### *1. Constitutional v. Prudential Standing*

The distinction between the requirements of constitutional and prudential standing is significant. As the Supreme Court has explained, standing "consist[s] of two related components: the constitutional requirements of Article III and nonconstitutional prudential considerations." *Id.* at 335; *see also Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 221 (3d Cir. 2004) ("[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," and answering that question "subsumes a blend of constitutional requirements and prudential considerations." (quotation omitted)). To invoke the jurisdiction of a federal court, a plaintiff must meet the "irreducible constitutional minimum" of Article III standing by establishing three elements: that she has suffered an "injury in fact" which is "concrete and particularized" and "actual or imminent"; that the injury is "fairly traceable to the challenged action of the defendant"; and that it is likely "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations and quotations omitted).

But prudential standing requirements are not derived from Article III, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–26 (2014), and rather are "a set of judge-made rules forming an integral part of judicial self-government," *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 179 (3d Cir. 2001) (internal quotation marks

9

omitted) (quoting *Gen. Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg., Inc.*, 197 F.3d 83, 87 (3d Cir. 1999)). These judge-made doctrines are meant to help the courts "avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those best suited to assert a particular claim." *Freeman v. Corzine*, 629 F.3d 146, 154 (3d Cir. 2010) (quoting *Joint Stock Soc'y*, 629 F.3d at 179).

Because "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system," *Grp. Against Smog & Pollution*, 810 F.3d at 122 (alteration in original) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)), a motion to dismiss for lack of subject jurisdiction pursuant to Rule 12(b)(1) and a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) come with myriad procedural differences. Those differences include that objections to subject matter jurisdiction can be raised at any stage of the proceedings; that a court can and must raise jurisdictional issues *sua sponte*; that a court can consider evidence beyond the pleadings when considering a jurisdictional challenge; and that the two rules invert the burden of persuasion, *i.e.*, the defendant bringing a Rule 12(b)(6) motion must show that the plaintiff has not stated a claim, but if it brings a Rule 12(b)(1) motion, it is the plaintiff's responsibility to show that the court has subject matter jurisdiction. *Id.* at 122 n.6 (citing *Henderson*, 562 U.S. at 434–35; *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997)); *Hartig*, 836 F.3d at 272 n.14 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 348–49 (3d Cir. 2016)).

## 2. *The Third-Party Standing Doctrine*

The distinction between constitutional and prudential standing can also be elusive, and the Courts of Appeals have not always spoken clearly about whether the third-party standing doctrine (including the shareholder standing rule) implicates Article III standing, and hence, the court's jurisdiction. *Compare Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2013) ("Like other rules of third-party standing . . . the shareholder-standing rule is a prudential limitation and does not affect the court's authority to hear the case [because] [p]rudential-standing doctrine[s] [are] not jurisdictional in the sense that Article III standing is." (quotation omitted)), *Wilderness Soc'y v. Kane County*, 632 F.3d 1162, 1168 n.1 (10th Cir. 2011) ("[P]rudential standing is not a jurisdictional limitation and may be waived . . . ."), *and Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999) (holding that shareholder standing rule does not implicate the court's jurisdiction and thus objections based on it could be waived), *with Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 n.2 (6th Cir. 2014) (noting that "the limit on third-party standing" can be raised by the court *sua sponte* as a matter of its own jurisdiction), *and Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49–50 & n.5 (2d Cir. 2014) (noting that the application of prudential standing doctrines implicated the court's subject matter jurisdiction).

We have not yet addressed this issue directly, although we have noted the divergence of views. *See Lewis v. Alexander*, 685 F.3d 325, 340 n.14 (3d Cir. 2012). We hold today that the shareholder standing rule is non-jurisdictional, implicating only a plaintiff's power to bring claims, not the Court's power to hear them. We reach this conclusion based on Supreme Court precedent, our precedent in other contexts,

and the nature of the derivative injury to shareholders, each of which we discuss below.

*Supreme Court Precedent.* While the Supreme Court has not yet squarely addressed this question, we find its statements regarding the distinctions between Article III standing and prudential standing instructional. In *Franchise Tax Board of California v. Alcan Aluminium Ltd.*, the Court noted that separate from Article III standing requirements are the various "prudential requirements of the standing doctrine," including the third-party standing doctrine and its related application, the "so-called shareholder standing rule." 493 U.S. at 336. It described the shareholder standing rule not as a jurisdictional limitation, but as an "equitable restriction," and it reasoned that regardless of whether the shareholder respondents in that case could meet the requirements of the shareholder standing rule, they nonetheless "ha[d] Article III standing to challenge the taxes that their wholly owned subsidiaries are required to pay" because their ownership interest meant the subsidiaries' financial injuries created "actual financial injur[ies]" to the shareholders. *Id.* But cf. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1586–87 (2020) (Thomas, J., concurring) (acknowledging that "the modern Court has characterized the [third-party standing] rule as a prudential rather than jurisdictional matter," and arguing that is inconsistent with "a historical understanding of Article III").

On other occasions, too, the Court has held that, while defects in Article III jurisdiction can never be waived, even when parties fail to raise them, the same is not true of issues related to the third-party standing doctrine. *Compare Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (noting that the jurisdictional requirements of Article

12

III standing "cannot be waived or forfeited"), *with Craig v. Boren*, 429 U.S. 190, 193–94 (1976) (concluding that arguments regarding third-party standing could be waived, even though, by contrast, similar concessions "would not be controlling upon the reach of this Court's constitutional authority to exercise jurisdiction under Art[icle] III"). Unlike its approach to federal jurisdiction, the Court "ha[s] not treated th[e] rule [against third-party standing] as absolute" and has carved out certain exceptions. *Kowalski v. Tesner*, 543 U.S. 125, 129 (2004). And while the Supreme Court has not yet clarified the third-party standing doctrine's "proper place in the standing firmament," it has done so for other standing doctrines labeled "prudential" and concluded, *e.g.*, in the context of statutory standing, that the phrase "prudential standing" is a "misnomer" and "misleading" because the doctrine relates not to the court's jurisdiction, but to whether the particular plaintiff can state a cause of action. *See Lexmark*, 572 U.S. at 127 & n.3, 128 n.4; *Shalom Pentecostal Church v. Acting Sec'y U.S. Dept. of Homeland Sec.*, 783 F.3d 156, 163–64 & n.7 (3d Cir. 2015).

In sum, while the Court has described third-party standing as an "alternative threshold question whether [plaintiffs] have standing to raise the rights of others," it views this question as "prudential" and distinct from "the constitutional minimum of standing, which flows from Article III's case-or-controversy requirement." *Kowalski*, 543 U.S. at 129–30.

*Our Precedent.* Concluding that the third-party standing doctrine is not jurisdictional is also consistent with our treatment of a similar question regarding antitrust standing. *See Hartig*, 836 F.3d at 269. Antitrust standing, like shareholder standing, is not an Article III standing doctrine, but

13

rather one that is variously characterized as prudential or a matter of "statutory standing."[5] *Id.* at 270; *see also Ethypharm S.A. Fr. v. Abbott Lab'ys*, 707 F.3d 223, 232 n.17 (3d Cir. 2013). Antitrust standing "focus[es] on the nature of the plaintiff's alleged injury [and] ask[s] whether it is of the type that the antitrust statute was intended to forestall." *Hartig*, 836 F.3d at 269 (second alteration in *Hartig*) (quoting *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 181 (3d Cir. 1997)). If it is not, the plaintiff has "no standing to sue under the antitrust laws." *Id.* (quoting *Barton & Pittinos*, 118 F.3d at 181). In *Hartig*, we held that antitrust standing, in contrast to Article III standing, does not "implicat[e] a court's subject matter jurisdiction" but rather "affect[s] only the plaintiff's ability to succeed on the merits," and accordingly a defect in antitrust standing does not put "a dismissal under Rule 12(b)(1) . . . legitimately in play." *Id.* at 269, 273. Our holding today is a natural extension of this precedent: Because the shareholder standing rule, like other third-party standing

---

[5] Whereas "[c]onstitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing," "[s]tatutory standing is simply statutory interpretation"; it only asks whether a plaintiff has a cause of action under the relevant statute. *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.6. We have concluded that, for the purposes of deciding whether antitrust standing is jurisdictional and whether it must be considered under Rule 12(b)(6), the outcome is the same whether it is considered a prudential or statutory standing doctrine. *Hartig*, 836 F.3d at 270; *Ethypharm S.A. Fr. v. Abbott Lab'ys*, 707 F.3d 223, 232 n.17 (3d Cir. 2013).

doctrines, is not a matter of Article III standing, it presents only merits, rather than jurisdictional concerns.

*The Nature of Derivative Shareholder Harm.* The very nature of the injury to shareholders in the derivative context confirms that, even when they are barred from suit under the shareholder standing rule as a prudential matter, those shareholders have constitutional standing, bringing them within the ambit of federal court jurisdiction. The facts of this case are illustrative. The disadvantageous terms of the APA, the below-market purchase price, and the disputed installment payments resulting from the Lawyers' alleged conflicted representation inflicted a direct financial injury on the LLCs, but they also inflicted an indirect injury on the LLCs' shareholders: the diminution of value in their ownership interests. And that injury meets all the requirements of Article III standing: the loss of financial value in their investments constitutes an injury-in-fact in that it is "actual," "concrete[,] and particularized," *Lujan*, 504 U.S. at 560 (quotations omitted), that injury was allegedly caused by the conflicted Lawyers' involvement in their sale, and that injury, if proven at trial, can be redressed by the court through a damages award. The absence of prudential "standing" under the shareholder standing rule thus does not alter the Shareholders' constitutional standing or the Article III jurisdiction that attends it.

In sum, the shareholder standing rule is a prudential rule, not a constitutional or jurisdictional one, and, just as in *Hartig*, because the Shareholders "had Article III standing sufficient to give the District Court subject matter jurisdiction, . . . a dismissal under Rule 12(b)(1) was not legitimately in play." *Hartig*, 836 F.3d at 273. The District Court therefore should have treated the Lawyers' motion to dismiss for lack of

15

shareholder standing as a motion under Rule 12(b)(6), instead of 12(b)(1). We turn now to the consequence of its failure to do so.

## B. Scope of remand

Though we conclude the District Court erred by dismissing on jurisdictional grounds under Rule 12(b)(1), "we may affirm on any basis supported by the record," *Hartig*, 836 F.3d at 273 (quoting *Davis*, 824 F.3d at 350), and could consider doing so here on Rule 12(b)(6) grounds, especially as the District Court indicated that it was "appl[ying] the same standard that it [would have] for Rule 12(b)(6) motions," that is, "accept[ing] the factual allegations of the complaint to be true and consider[ing] them in the light most favorable to the plaintiffs." JA 23a.

On inspection, however, it appears that the District Court's analysis of the Shareholders' complaint under Rule 12(b)(1) differed in certain respects from the analysis required under Rule 12(b)(6). For example, by applying Rule 12(b)(1) rather than Rule 12(b)(6), it left the burden of persuasion to establish subject matter jurisdiction with the Shareholders, as "the party asserting its existence." *Id.* In addition, because it incorrectly assumed the shareholder standing rule presented a jurisdictional issue, it considered the Appellants' status as shareholders to be dispositive given the terms of the APA, and thus may not have grappled with the specific allegations in the complaint that Potter argues establish a personal injury to him, based on an alleged independent attorney-client relationship and its attendant breach of duties that would not be subject to the shareholder standing rule. *See* JA 25a-27a. He alleges, for example, that the Lawyers, "in addition to serving the [LLCs], provided legal advice and counsel to Potter in his individual

16

capacity" and learned confidential information in the course of that representation that they later misused, JA 38a; *see also* JA 38a–39a, 43a–46a, and it is a well-established exception to the shareholder standing rule that "a shareholder with a direct, personal interest in a cause of action [may] bring suit even if the corporation's rights are also implicated." *Franchise Tax Bd.*, 493 U.S. at 336. Whether the allegations of the complaint are sufficient to meet this exception is a matter appropriate for the District Court to consider in the first instance.

Remand is also appropriate so that the District Court can consider whether the Shareholders should be permitted to amend their complaint. After the dismissal of their complaint under Rule 12(b)(1) for lack of standing, the Shareholders submitted a motion for reconsideration or, in the alternative, to amend. JA 17a-18a n.1. The District Court denied the motion for reconsideration on the merits, *id.*, but did not do so for the motion to amend. Instead, it reasoned that because it had already held that the Shareholders "lack Article III standing to prosecute their underlying claims . . . they also lack standing to cure th[at] jurisdictional defect" with an amendment. JA 18a n.1.

Of course, "[u]ltimately, a motion to amend is committed to the 'sound discretion of the district court.'" *In re Allergan Erisa Litig.*, 975 F.3d 348, 356 n.13 (3d Cir. 2020) (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001)). But when a court wrongly concludes that it does not have the power to entertain amendments at all and therefore denies the motion without considering its merits, that "is not an exercise of discretion; it is merely abuse of that discretion." *Foman v. Davis*, 371 U.S. 178, 182 (1962). And, in that circumstance, the order denying leave to amend must be vacated and the motion's merits considered on remand. *See*

17

*Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408, 1417 (3d Cir. 1990).

In short, because neither the question of whether the Shareholders' allegations successfully state a claim under the appropriate Rule 12(b)(6) framework nor whether amendment should be permitted has yet been passed upon by the District Court, we will remand for that Court to address these issues in the first instance.

\* \* \*

For the foregoing reasons, we will vacate the District Court's order of dismissal under Rule 12(b)(1) and its order denying leave to amend, and remand for further proceedings consistent with this opinion.