IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 14, 2024 Session

### BRETT W. HOUGHTON, ET AL. v. MALIBU BOATS, LLC

**Appeal from the Circuit Court for Loudon County**
**No. 2018-CV-12      Michael S. Pemberton, Judge**

_____

### No. E2023-00324-COA-R3-CV
_____

This appeal concerns standing and subject matter jurisdiction.  Brett and Ceree Houghton ("Plaintiffs") were the sole shareholders of Great Wakes Boating, Inc. ("GWB"), a Malibu Boats, LLC ("Defendant") dealership.  Defendant ended its dealership agreement with Plaintiffs, and GWB failed.  Plaintiffs sued Defendant in the Circuit Court for Loudon County ("the Trial Court") for intentional misrepresentation, fraudulent concealment, and promissory fraud.  The jury awarded Plaintiffs $900,000 in damages for loss of equity in certain real property owned by GWB.  Defendant filed a motion for judgment notwithstanding the verdict and/or for a new trial.  At a hearing on the motion, Defendant argued for the first time that Plaintiffs lacked standing.  The Trial Court agreed and entered an order dismissing Plaintiffs' complaint for lack of subject matter jurisdiction, deeming the other issues in Defendant's motion moot.  Plaintiffs appeal.  We hold that Defendant's challenge to Plaintiffs' standing went to the merits and did not implicate subject matter jurisdiction.  Defendant's challenge to Plaintiffs' standing is waived as untimely raised.  We reverse the judgment of the Trial Court and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Dale J. Montpelier and Katherine A. Young, Knoxville, Tennessee, for the appellants, Brett W. Houghton and Ceree A. Houghton.

Taylor A. Williams, Kyle A. Baisley, and W. Michael Baisley, Knoxville, Tennessee, for the appellee, Malibu Boats, LLC.

# OPINION

## Background

GWB operated as a boat dealership from 2009 until 2016. GWB failed after Defendant terminated its dealership agreement with Plaintiffs, who declared personal bankruptcy. In February 2018, Plaintiffs sued Defendant in the Trial Court. Plaintiffs filed an amended complaint in October 2018 and a second amended complaint in March 2019. In their second amended complaint Plaintiffs asserted, as relevant, claims of intentional misrepresentation, fraudulent concealment, and promissory fraud. Plaintiffs state that Defendant misled them into believing their business relationship would continue, and Plaintiffs incurred damages by relying upon that false impression. With respect to damages, Plaintiffs alleged, in part:

> 398. As a result of the foregoing, Great Wakes lost customers, new boat sales, the ability for trade-in transactions, the ability to sell Malibu parts, the ability to provide warranty service, other dealer benefits, the ability to make payroll, the ability to pay bills as they came due, the ability to pay on the floor plans, and the ability to service its debts, all of which directly caused damage to Plaintiffs by virtue of the destruction of their business, the loss of their livelihood, the loss of the value of their stock, and the loss of their personal assets to the extent invested in the business.
>
> 399. Great Wakes has been sued by several Floor Plan financing companies, including Northpoint. All Floor Plan financing providers have accelerated all amounts due from Great Wakes and repossessed financed boats, and several had judgments entered against Great Wakes and one or both of the Plaintiffs as personal guarantors.
>
> 400. As a further result of these developments, Plaintiffs' credit ratings have been effectively destroyed.

Defendant filed a partial motion to dismiss, arguing among other things that it had no duty to disclose that it had no intention of entering into the 2014-15 dealer agreements with Plaintiffs. Defendant also filed a motion to dismiss with respect to Ceree Houghton for failure to state a claim. In addition, Defendant filed an answer to Plaintiffs' second amended complaint. Defendant asserted various affirmative defenses such as failure to state a claim, failure to plead fraud with particularity, the statute of limitations, unclean hands, and justification. The Trial Court denied Defendant's motions. Additional procedural history unfolded, and in September 2022, this case was tried by jury.

At the close of Plaintiffs' proof, Defendant moved for a directed verdict. One issue at trial concerned damages related to real property owned by GWB. Despite not owning the real property themselves, Plaintiffs sought damages for it. Plaintiffs' counsel used an analogy to describe Plaintiffs' theory:

> MR. MONTPELIER: . . . It's very simple. I owned an apple. Because of what they did, I lost my apple. They had a building -- and I misspoke, Your Honor. The appraised value of the testimony was 2.6 million. I misread my notes.
> That was the value. They had a building worth 2.6 million. And because of these --
> THE COURT: Okay. But Malibu didn't make them go buy the building.
> MR. MONTPELIER: That's not the point. It was an asset. They had the building. In reliance of these representations, they --
> THE COURT: Well, they had the building after it.
> MR. MONTPELIER: They ended up losing the building.
> THE COURT: Well, okay. But --
> MR. MONTPELIER: The testimony is because of the actions of Malibu, caused them to make fundamentally different business decisions, and it's for the jury to decide whether that resulted in the loss of the building. And if it did, then they can recover the difference in what they lost.
> THE COURT: Okay.
> MR. MONTPELIER: And I would add this, make it a separate line item on the jury verdict form. If the Court of Appeals disagrees, they can just strike that line.

The Trial Court denied Defendant's motion. At trial's end, the jury returned a verdict in Plaintiffs' favor. The jury concluded that Plaintiffs had proven by a preponderance of the evidence that Defendant committed intentional misrepresentations, fraudulent concealment, and promissory fraud. The jury awarded Plaintiffs $900,000 for loss of equity in the dealership buildings. The jury declined to award Plaintiffs damages for boat show expenses incurred, diminution of value of business, or pain and suffering. The jury also concluded that Plaintiffs had not proven by clear and convincing evidence that they were entitled to punitive damages. In November 2022, judgment was entered.

In December 2022, Defendant filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Regarding its motion for judgment notwithstanding the verdict, Defendant argued that Plaintiffs failed to meet their burden under the benefit of the bargain rule and that the record did not support the jury's award of $900,000. With respect to its motion for a new trial, Defendant argued that the evidence did not preponderate in favor of the jury's verdict. At oral argument on Defendant's

motion, Defendant argued for the first time that the Trial Court lacked subject matter jurisdiction. Defendant asserted that Plaintiffs were required to bring claims related to diminution of value of the real property at issue under a statute governing derivative claims. The Trial Court asked the parties for additional briefing.

In February 2023, the Trial Court entered an order dismissing Plaintiffs' complaint for lack of subject matter jurisdiction. In its order, the Trial Court stated, in part:

> 1.     The causes of action alleged in this matter, and resulting damages awarded by the jury in this matter, belong to Great Wakes Boating, Inc., a Tennessee corporation (hereinafter, "GWB").
> 2.     GWB is not, and has never been, a party to this action.
> 3.     The causes of action alleged in this matter may be brought by GWB in its own name, or by the shareholders of GWB, on behalf of GWB, as a shareholder derivative suit pursuant to Tenn. Code Ann. § 48-56-401 *et seq*.[1]
> 4.     The causes of action alleged in this matter may not be brought by the individual shareholders of GWB in their own names. As such, Plaintiffs do not have standing to bring this action in their own names.
> 5.     In reliance on *Keller v. Estate of McRedmond*, 495 S.W.3d 852 (Tenn. 2016), this Court finds the doctrine of constitutional or statutory standing applies to this matter.
> 6.     Matters of constitutional or statutory standing are non-waivable, and thus the issue of standing is timely and properly before this Court.

---

[1] Tenn. Code Ann. § 48-56-401 is part of the Tennessee Nonprofit Corporation Act. GWB is a for-profit entity. Defendant acknowledges the Trial Court's error in citing the wrong statute but points out that questions of law are reviewed by this Court *de novo* without any presumption of correctness. Defendant cites Tenn. Code Ann. § 48-17-401 of the Tennessee Business Corporation Act as the applicable statute instead, which provides as relevant:

> (a) A person may not commence a proceeding in the right of a domestic or foreign corporation unless the person was a shareholder of the corporation when the transaction complained of occurred or unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time.
> (b) A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why the person did not make the demand. Whether or not a demand for action was made, if the corporation commences an investigation of the charges made in the demand or complaint, the court may stay any proceeding until the investigation is completed.

Tenn. Code Ann. § 48-17-401 (West eff. April 10, 2008).

7. Based on the above, this Court finds that it lacks subject matter jurisdiction over this matter because the Plaintiffs lack standing to pursue the alleged causes of action. However, if this case were to be one in which the doctrine of "judicially created" non-constitutional standing applied, the Court finds that defendant has waived that standing argument.

8. As a result, Plaintiffs' Second Amended Complaint is dismissed with prejudice, and costs are taxed to the Plaintiffs.

9. The balance of the issues contained in Malibu's Motion for Judgment Notwithstanding the Verdict, or in the Alternative, Motion for a New Trial are denied as moot.

10. Plaintiffs' Motion for Post-And Pre-Judgment Interest and Plaintiffs' Motion for Discretionary Costs are also denied as moot.

Plaintiffs filed a motion to alter or amend. In March 2023, the Trial Court denied Plaintiffs' motion. The Trial Court stated, in pertinent part:

1. The evidence presented before this Court showed that the real estate at issue in this case was owned by a non-party, Great Wakes Boating, Inc., of which the Plaintiffs were the only shareholders of that corporation. The Plaintiffs brought this lawsuit in their individual names.

2. The Amended Complaint does not state that the lawsuit was being brought by the Plaintiffs on behalf of the corporation.

3. The Plaintiffs were personal guarantors in respect to the real estate owned by the corporation.

4. After all the events took place that gave rise to the lawsuit, the Plaintiffs took bankruptcy and were relieved of their personal guaranties as to the debt.

5. Therefore, before this Court is a lawsuit: (a) brought by the two individual Plaintiffs seeking damages for three intentional torts; (b) in which damages were awarded for loss of value of real estate not owned by the Plaintiffs, but owned by the corporation, a non-party, albeit the Plaintiffs being the guarantors of the corporation's debt; (c) the lawsuit was not brought by the corporation as the owner of the real estate; and (d) the damages awarded here would have inured to the benefit of the non-party corporation had it been named as a party or had the lawsuit been brought in the nature of a derivative suit.

6. This Court previously ruled that the Plaintiffs lacked the requisite standing to bring this lawsuit totally in their own individual names and capacities, which this Court has been asked to reconsider. This Court has done so and declined to alter or amend its prior ruling.

7. The Plaintiffs, among other cases, rely on *Hall v. Tennessee Dressed Beef Co.*, 957 S.W.2d 536 (Tenn. 1997) in support of the argument that a

shareholder may bring both a derivative and a direct action. This Court read *Hall* and the cases that cite *Hall*, and finds that the *Hall* case is very much factually distinguishable from the instant case. *Hall* involved a shareholder suing the corporation regarding a right of first refusal to buy shares. That is obviously not the situation that we have here. The Court had previously stated its reasoning when it ruled at the hearing in January, and this Court is not going to recapitulate such reasoning here, other than to say that this Court will not amend or alter its previous ruling.

Plaintiffs timely appealed to this Court.

## Discussion

We restate and consolidate Plaintiffs' multiple issues into the following dispositive issue: whether the Trial Court erred in holding that it lacked subject matter jurisdiction over this case. The Tennessee Supreme Court has discussed subject matter jurisdiction as follows:

> The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. Subject matter jurisdiction involves the nature of the cause of action and the relief sought, and can only be conferred on a court by constitutional or legislative act. Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness.

*Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000) (citations omitted).

Standing also is implicated in this case. The Tennessee Supreme Court has discussed standing thusly:

> Our jurisprudence recognizes two categories of standing that govern who may bring a civil cause of action: non-constitutional standing and constitutional standing. Non-constitutional standing focuses on considerations of judicial restraint, such as whether a complaint raises generalized questions more properly addressed by another branch of the government, and questions of statutory interpretation, such as whether a statute designates who may bring a cause of action or creates a limited zone of interests. *See In re Estate of Smallman*, 398 S.W.3d 134, 148-49 (Tenn. 2013); *State v. Harrison*, 270 S.W.3d 21, 28 (Tenn. 2008); *see also Ditto v. Del. Sav. Bank*, No. E2006-01439-COA-R3-CV, 2007 WL 471146, at *3 (Tenn. Ct. App. Feb. 14, 2007) (discussing prudential considerations relevant

-6-

to non-constitutional standing).[2]  Constitutional standing, the issue in this case, is one of the "irreducible . . . minimum" requirements that a party must meet in order to present a justiciable controversy.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001); *Norma Faye Pyles Lynch Family Purpose LLC* [*v. Putnam Cnty.*], 301 S.W.3d [196,] 202-03 [(Tenn. 2009)] (noting that Tennessee courts' adoption of the various justiciability doctrines, including standing, has a basis in the separation of powers required under article II, sections 1 and 2 of the Tennessee Constitution).

> To establish constitutional standing, a plaintiff must satisfy "three 'indispensable' elements."  [*ACLU of Tenn. v.*] *Darnell*, 195 S.W.3d [612,] 620 [(Tenn. 2006)] (quoting *Petty* [*v. Daimler/Chrysler Corp.*], 91 S.W.3d [765,] 767 [(Tenn. Ct. App. 2002)]).  First, a party must show an injury that is "distinct and palpable"; injuries that are conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general citizenry are insufficient in this regard.  *Id*.  Second, a party must demonstrate a causal connection between the alleged injury and the challenged conduct.  *Id*. (citing *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001)).  While the causation element is not onerous, it does require a showing that the injury to a plaintiff is "fairly traceable" to the conduct of the adverse party.  *Id*. (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)).  The third and final element is that the injury must be capable of being redressed by a favorable decision of the court.  *Id*.; *see also Davis*, 54 S.W.3d at 280 (noting that the third standing element requires an injury that "is apt to be redressed by a remedy that the court is prepared to give" (quoting *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992))).

*City of Memphis v. Hargett*, 414 S.W.3d 88, 98 (Tenn. 2013) (footnote in original but renumbered).

Plaintiffs argue that the Trial Court erred in concluding that it lacked subject matter jurisdiction.  According to Plaintiffs, their standing in this case is common-law based and

---

[2] Ordinarily, issues of non-constitutional standing are not essential to subject matter jurisdiction and are waived if not properly preserved. *See In re Estate of Smallman*, 398 S.W.3d at 148-49.  However, "[w]hen a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite." *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004).

any challenge thereto is subject to waiver. Plaintiffs state that, to the extent Defendant is correct about Plaintiffs not being the proper parties to seek damages for real property owned by GWB, Defendant waived that challenge by waiting until the last minute to raise it. Plaintiffs note that Defendant never raised its standing defense before trial. The Trial Court said that it would have found waiver on Defendant's part had it not determined that standing was jurisdictional and non-waivable.

In response, Defendant argues that Plaintiffs lack standing to recover damages for alleged injury to GWB; that Plaintiffs' claims could only have been brought as a derivative action; that Plaintiffs failed to comply with the requirements of Tenn. Code Ann. § 48-17-401 for a derivative action; and that permitting shareholders to individually gain from corporate losses violates Article III constitutional standing. Defendant asserts that, in this case, standing is statutory and a jurisdictional prerequisite that cannot be waived.

Both parties contend with *Keller v. Estate of McRedmond*, 495 S.W.3d 852 (Tenn. 2016). In *Keller*, our Supreme Court explained that a corporation and its shareholders are not the same; their rights and liabilities are distinct. *Id*. at 866. The High Court stated that, generally, shareholders have no individual right against third parties for harms done to the corporation. *Id*. at 867. When a corporation does not pursue a cause of action on its own behalf, shareholders may file a derivative action on behalf of the corporation, with the corporation being an indispensable party. *Id*. at 867-68. On the other hand, when shareholders allege direct injury to themselves, they may file a lawsuit on their own behalf provided the injury is distinct to them. *Id*. at 868-69. To determine whether a claim is derivative or direct, the *Keller* Court adopted the analytical framework articulated in the Delaware case of *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), which set out these essential questions:

> We set forth in this Opinion the law to be applied henceforth in determining whether a stockholder's claim is derivative or direct. That issue must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?

*Keller*, 495 S.W.3d at 875 (quoting *Tooley*, 845 A.2d at 1033). *Keller* discusses the direct/derivative distinction, adopts the *Tooley* framework, and applies *Tooley* for issues of standing, but never states that shareholder standing implicates subject matter jurisdiction. In fact, *Keller* does not mention subject matter jurisdiction at all.

A case from the Third Circuit discusses shareholder standing and concludes that it is not constitutional in nature. In *Potter v. Cozen & O'Connor*, 46 F.4th 148 (3d Cir. 2022),

the district court granted a motion to dismiss certain shareholders' claims for lack of subject matter jurisdiction on grounds that the injury they complained of was suffered only by the corporate entities involved. *Id*. at 152, 154-55. The Third Circuit vacated the district court's judgment, stating in part:

> The very nature of the injury to shareholders in the derivative context confirms that, even when they are barred from suit under the shareholder standing rule as a prudential matter, those shareholders have constitutional standing, bringing them within the ambit of federal court jurisdiction. The facts of this case are illustrative. The disadvantageous terms of the APA, the below-market purchase price, and the disputed installment payments resulting from the Lawyers' alleged conflicted representation inflicted a direct financial injury on the LLCs, but they also inflicted an indirect injury on the LLCs' shareholders: the diminution of value in their ownership interests. And that injury meets all the requirements of Article III standing: the loss of financial value in their investments constitutes an injury-in-fact in that it is "actual," "concrete[,] and particularized," *Lujan* [*v. Defs. of Wildlife*], 504 U.S. [555,] 560, 112 S.Ct. 2130 [119 L.Ed.2d 351 (1992)] (quotations omitted), that injury was allegedly caused by the conflicted Lawyers' involvement in their sale, and that injury, if proven at trial, can be redressed by the court through a damages award. The absence of prudential "standing" under the shareholder standing rule thus does not alter the Shareholders' constitutional standing or the Article III jurisdiction that attends it.
>
> In sum, the shareholder standing rule is a prudential rule, not a constitutional or jurisdictional one, and, just as in *Hartig*, because the Shareholders "had Article III standing sufficient to give the District Court subject matter jurisdiction, . . . a dismissal under Rule 12(b)(1) was not legitimately in play." *Hartig* [*Drug Co. Inc. v. Senju Pharm. Co. Ltd.*], 836 F.3d [261,] 273 [(3d Cir. 2016)]. The District Court therefore should have treated the Lawyers' motion to dismiss for lack of shareholder standing as a motion under Rule 12(b)(6), instead of 12(b)(1).

*Potter*, 46 F.4th at 157.

Here, Plaintiffs sued Defendant for, as relevant, intentional misrepresentation, fraudulent concealment, and promissory fraud. These were common law claims filed by Plaintiffs as individuals. It is little wonder that Plaintiffs failed to comply with Tenn. Code Ann. § 48-17-401 as they did not purport to file a derivative action. Defendant nevertheless reasons that Plaintiffs were required to file a derivative action based on the kind of relief

they sought. Defendant says that Tenn. Code Ann. § 48-17-401 is akin to the parental rights termination statute at Tenn. Code Ann. § 36-1-113(b) in that it limits with exclusivity who may bring an action. Once again, however, Plaintiffs did not pursue a derivative action. They pursued individual claims. Had Plaintiffs purported to file a derivative claim on behalf of GWB and failed to comply with the requirements of Tenn. Code Ann. § 48-17-401, Defendant's argument might have more salience. As it happens, Plaintiffs did not. We are thus unpersuaded by Defendant's argument that the Trial Court lacked subject matter jurisdiction on the basis of Plaintiffs' failure to comply with Tenn. Code Ann. § 48-17-401. What is more, there are instances when individuals may file direct claims in the corporate context. As Plaintiffs point out in their reply brief, "a fair reading of *Keller* is that <u>there are exceptions when an individual can sue in their own name instead of in the corporate name</u>." (Emphasis in original). It would be curious if trial courts lacked subject matter jurisdiction to even parse that distinction.

Continuing its argument, Defendant says that allowing Plaintiffs to reap a windfall for damages incurred by GWB would violate Article III standing. To determine whether that is so, we apply the minimum requirements of Article III standing to Plaintiffs' claims. Plaintiffs alleged as pertinent (1) that they were injured by their loss of equity in the real property at issue—a concrete, particularized injury; (2) that the injury was caused by Defendant's fraud and misrepresentations; and (3) that the injury is capable of being redressed by an award of damages. Thus, Plaintiffs have established the bedrock requirements of Article III standing. All the same, Defendant argues that under *Keller* and the *Tooley* test, Plaintiffs are not the proper parties to bring this lawsuit. However, even if that is so, it does not implicate Article III standing. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 125-26 (2d Cir. 2022) ("Here, the inquiry into whether a claim is direct, and a plaintiff therefore has 'standing' to bring it, is not an Article III standing inquiry. Even if the district court were right that Miller's claims had to be brought in a derivative suit, it should have dismissed the complaint for failure to state a claim.") (Footnote omitted); *see also Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 993 (11th Cir. 2016) ("Although the district court correctly concluded that Culverhouse's claims are derivative, it incorrectly described this defect as jurisdictional."); *Potter*, 46 F.4th at 155 ("We hold today that the shareholder standing rule is non-jurisdictional, implicating only a plaintiff's power to bring claims, not the Court's power to hear them."). We conclude that the Trial Court had subject matter jurisdiction to hear this case.[3] Therefore, Defendant's challenge to Plaintiffs' standing was subject to waiver.

Issues not timely raised before a trial court can be waived. The Tennessee Supreme Court has stated: "It is well settled in this state that a party cannot raise a new issue . . . on

---

[3] This does not eliminate the burden on Plaintiffs to prove each element of their cause of action including damages.

motion for a new trial[ ] that was not within the scope of the pleadings and was not presented to the court at the trial of the case." *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 294 (Tenn. 2017) (quoting *Serv-U-Mart, Inc. v. Sullivan Cnty.*, 527 S.W.2d 121, 124 (Tenn. 1975)). In addition, the High Court has stated that "[w]e are of the opinion that there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001). The rationale for waiver is evident—it would be unjust to permit a party to spring a new theory on an opposing party at the last minute after the time and expense of trial when there is no basis shown for why the defense was not raised earlier.

Defendant argues that it "challenged [Plaintiffs'] proof supporting the award of damages related to the building . . ." and that the case proceeded to a verdict over Defendant's objections. However, our review of the transcripts reflects that Defendant did not object to Plaintiffs' standing on the basis of GWB's ownership of the buildings. Defendant first raised that issue of subject matter jurisdiction and standing at the hearing on its post-trial motions. The Trial Court stated that, but for its conclusion on subject matter jurisdiction, it would have found waiver on Defendant's part. Regarding waiver, we agree with the Trial Court. Defendant waited too long to assert its defense. Thus, the issue of whether Plaintiffs have standing is waived.

Defendant asks that, in the event we reverse, this case should be remanded for the Trial Court to consider those issues in Defendant's post-trial motions that were deemed moot because of the subject matter jurisdiction ruling. We agree that the remaining issues in Defendant's post-trial motions, and all other issues previously deemed moot by the Trial Court, require resolution. We reverse the judgment of the Trial Court and remand for further proceedings consistent with this Opinion.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, Malibu Boats, LLC.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-11-